**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Noodles Development, LP,<br><br>    Plaintiff,<br><br>vs.<br><br>Latham Noodles, LLC; Clifton Park Noodles, LLC; Jennifer Matteo; Chris Holmes; Todd Leach; Todd Bronson; Mark Matteo,<br><br>    Defendants. | No. CV 09-1094-PHX-NVW<br><br>**ORDER** |

Defendants (collectively "Franchisee") move to compel arbitration and stay litigation under the terms of their franchise agreement ("the Agreement") with Plaintiff Latham Noodles ("Franchisor"). (Doc. # 18.) Franchisor owns the rights to the "Nothing But Noodles" franchise of restaurants. Franchisee entered into the Agreement to operate a Nothing But Noodles franchise in New York. The Agreement provides as follows:

> Except as specifically provided under this Agreement, any dispute or claim relating to or arising out of this Agreement must be resolved exclusively by mandatory arbitration by and in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") or another arbitration service agreed to by the parties.

(Doc. # 1, ex. A, part 3, ¶ 23.2.) The agreement further provides,

> Noodles Development will have the right to petition a court of competent jurisdiction for the entry of temporary and permanent injunctions and orders

> of specific performance enforcing the provisions of this Agreement for any action relating to: (a) Franchisee's use of the Marks or the System . . . ; (d) Franchisee's violation of the provisions of this Agreement relating to confidentiality and the covenants not to compete; and (e) any act or omission by Franchisee or Franchisee's employees that . . . (2) is dishonest or misleading to the guests or customers of the Franchised Restaurant or other Nothing But Noodles Restaurants . . . , or (4) may impair the goodwill associated with the Marks or the System.

(*Id.* ¶ 23.1.)

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, "embodies a clear federal policy in favor of arbitration" and "'[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). "Under § 4 of the FAA, a district court must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue." *United Computer Sys. v. AT&T Info. Sys.*, 298 F.3d 756, 766 (9th Cir. 2002) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Franchisor challenges only the second element of this test, arguing that the arbitration clause in the Agreement does not encompass the claims it has brought against Franchisee.

The Agreement requires arbitration of "any dispute or claim relating to or arising out of this Agreement." Our circuit has observed that the phrase "arising out of or relating to" creates an arbitration clause that is "broad and far reaching" in scope. *Chiron Corp.*, 207 F.3d at 1131; *see also Britton v. Co-op Banking Group*, 4 F.3d 742, 745 (9th Cir. 1993) (holding that such language is "routinely used in many securities and labor agreements to secure the broadest possible arbitration coverage"). An arbitration clause with a broad and far reaching scope "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula*, 175 F.3d at 721 (interpreting an arbitration clause that applied to all disputes "arising in connection with" the agreement). To require arbitration, the factual allegations of the complaint "need only 'touch matters' covered by the contract

containing the arbitration clause." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)).

All of the facts alleged in Franchisor's complaint have a significant relationship to the Agreement. The complaint alleges trademark and trade dress infringement, misappropriation of trade secrets, and breach of contract. The factual predicate of these claims is Franchisee's alleged misuse of the Nothing But Noodles marks and system. Since Franchisee's use of the Nothing But Noodles marks and system is the core subject of the Agreement, Franchisor's claims have a significant relationship to the Agreement and must be arbitrated. *See Filimex, L.L.C. v. Novoa Invs., L.L.C.*, 2006 U.S. Dist. LEXIS 56039 at *13–15, 2006 WL 2091661 at *5 (D. Ariz. July 17, 2006) (holding that trademark infringement, common law trademark, trade name and trade dress infringement, and unfair competition claims were all arbitrable where the arbitration clause applied to "any dispute . . . arising under or pursuant to" a licensing agreement).

Franchisor also alleges that Franchisee tortiously interfered with its business relationships. This claim is significantly related to the confidentiality clauses and covenants not to compete in the Agreement and the Area Development Agreement (doc. # 1, ex. C), which also contains an arbitration clause. The Area Development Agreement provides Franchisee with the right to sell new franchises on behalf of Franchisor. Franchisor alleges that Franchisee has instead been soliciting existing Nothing But Noodles franchises to rebrand their restaurants under another mark. The facts of this allegation are significantly related to Franchisee's duties as a representative of Franchisor under the Area Development Agreement, especially those provisions relating to confidentiality and competition. *See P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (holding that an agency agreement required arbitration of a tortious interference claim because the factual allegations rather than the legal causes of action control the applicability of an arbitration clause); *American Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 94 (4th Cir. 1996) (holding that a tortious interference claim was subject to arbitration because of its significant relationship to a

- 3 -

1  noncompetition clause). The Agreement therefore requires arbitration of the tortious
2  interference claim.

3  Moreover, Franchisor's complaint itself impliedly admits that the facts underlying
4  each of its claims touch upon or have a significant relationship to the Agreement. At the
5  end of each count, the complaint requests the court to resolve Franchisor's damages
6  requests for reasons of judicial economy. (*See id.* ¶¶ 37, 46, 51, 57.) Franchisor's appeal
7  to judicial economy betrays its recognition that the substance of each claim is covered by
8  the arbitration agreement and therefore cannot be adjudicated by this Court. Accordingly,
9  all of Franchisor's claims against Franchisee are subject to the arbitration clause.

10  The Agreement does, however, reserve to Franchisor the ability to seek
11  preliminary or permanent injunctive relief in court for certain types of claims. Typically,
12  courts in our circuit may not grant preliminary injunctive relief where interim relief is
13  available from an arbitral tribunal. *Simula*, 175 F.3d at 726; *Greenpoint Technoligies,*
14  *Inc. v. Peridot Associated S.A.*, 2009 U.S. Dist. LEXIS 21108 at *7–8 (W.D. Wash. Mar.
15  11, 2009) (listing district court cases following this principle). The terms of the
16  Agreement nevertheless control the scope of the arbitration clause in this suit. *See First*
17  *Options v. Kaplan*, 514 U.S. 938, 944 (1995) ("The relevant state law here, for example,
18  would require the court to see whether the parties objectively revealed an intent to submit
19  the arbitrability issue to arbitration."). The Agreement permits Franchisor to seek
20  injunctive relief from this Court despite the availability of such relief under the rules of
21  the American Arbitration Association. *See* Rule 34 of the American Arbitration
22  Association's Rules of Commercial Arbitration.

23  However, the Agreement does not specify whether Franchisor may seek permanent
24  injunctive relief in court before obtaining a substantive determination of the merits of its
25  claims from an arbitral tribunal. Franchisor argues that it need not first arbitrate the
26  substantive merits of its claims and that because it may bring an action for injunctive
27  relief before this Court, principles of judicial economy should allow it to litigate its
28  damages claims here as well. Such an interpretation nullifies the arbitration clause, for

once this Court decides the merits of Franchisor's claims, there is little purpose in involving an arbitral tribunal. It conflicts with the parties' demonstrated intent to have an arbitral tribunal, not a court, decide the merits of "any dispute or claim arising out of or related to" the Agreement.

Alternatively, the Agreement's injunction provision may simply be intended to preserve the availability of a court to impose an injunctive remedy, rather than decide the merits of the claims. In other words, it may allow Franchisor to seek preliminary injunctive relief to maintain the status quo during arbitration and to seek permanent injunctive relief if the arbitral tribunal rules in its favor. This interpretation is equally as plausible, if not more plausible than Franchisor's interpretation. The ambiguous relationship between the Agreement's arbitration clause and the injunction provision must be reconciled in favor of arbitration. *Simula,* 175 F.3d at 719.

Franchisor may seek emergency injunctive relief to preserve the status quo while it arbitrates, but it must obtain a substantive determination of the merits of its claims from an arbitral tribunal before applying for a permanent injunction from this Court. Franchisor has not yet moved for any such emergency injunctive relief. At least one court has recently held that, under Arizona law, an arbitration agreement that reserves the right to seek judicial injunctive relief to only one party is substantively unconscionable. *Wernett v. Serv. Phoenix, LLC*, 2009 U.S. Dist. LEXIS 62593 at *26–28, 2009 WL 1955612 at *8 (D. Ariz. July 6, 2009). Should Franchisor seek preliminary injunctive relief from this Court instead of from the arbitral tribunal, it will first have to address the validity of the Agreement's one-sided injunction provision under Arizona law.

Franchisor also contends that it need not arbitrate with Defendant Mark Matteo because he is not a signatory to the Agreement. A nonsignatory to an arbitration agreement, such as Mark Matteo, may estop a signatory from refusing to arbitrate its claim against the nonsignatory where the dispute is "intertwined with the contract providing for arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th Cir. 2009) (citing *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir.

2008)). "[A]pplication of equitable estoppel is warranted . . . when the signatory to the contract containing the arbitration clause raises allegations of . . . substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005), *cited with approval in Mundi*, 555 F.3d at 1047 (alterations omitted). The complaint alleges that "the Individual Guarantors and Defendant M. Matteo have contacted Noodles' franchisees and made attempts to induce such franchisees into breaching their respective agreements with Noodles." (Doc. # 1 ¶ 53.) It therefore raises allegations of substantially interdependent and concerted misconduct by Matt Matteo and the defendant signatories to the Agreement. Accordingly, Franchisor is estopped from refusing to arbitrate its claim against Matt Matteo.

The FAA and Arizona law provide that the Court must stay a court action involving an issue subject to arbitration upon the application of any party. 9 U.S.C. § 3; A.R.S. § 12-1502(D). Having concluded that all claims in this suit are subject to arbitration, but that Franchisor may apply to this Court for injunctive remedies, the Court will stay this action until arbitration has been had in accordance with the Agreement.

IT IS THEREFORE ORDERED that Defendants' motion to compel arbitration and stay litigation (doc. # 18) is granted.

IT IS FURTHER ORDERED that the parties file a joint status report concerning the arbitration proceedings by March 1, 2010.

DATED this 26th day of August, 2009.

Neil V. Wake
United States District Judge